1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9         SOUTHERN DISTRICT OF CALIFORNIA
10
11   UNITED STATES OF AMERICA,              Case No.:  13cr1247-JAH
12                            Plaintiff,
                                           **ORDER DENYING DEFENDANT'S
13   v.                                     MOTION FOR COMPASSIONATE
                                            RELEASE (Doc. No. 88)**
14   EARNEST ALLEN JR.,
15                            Defendant.
16

17                        **INTRODUCTION**

18        Pending before the Court is Defendant Earnest Allen Jr.'s (hereinafter, "Defendant")

19   Motion for Compassionate Release.  (ECF. No. 88). The motion has been fully briefed.

20   (ECF Nos. 90, 97, 100, 101, 102, 103, 104). After a careful review of the pleadings

21   submitted, and for the reasons set forth below, IT IS HEREBY ORDERED Defendant's

22   motion is **DENIED**.

23                        **BACKGROUND**

24        On September 9, 2015, Defendant pled guilty to a superseding information charging

25   him with Enticement of a Minor, in violation of 18 U.S.C. § 2422(b). (*See* "Superseding

26
27
28

                                   1

Information", ECF No. 63; "Plea Agreement", ECF No. 67.)[1]  On February 1, 2016, this Court sentenced Defendant to 132-months in custody, and fifteen years of supervised release. (ECF Nos. 83, 84).

On May 20, 2020, Defendant, proceeding *pro se*, filed a Motion for Reduction of Sentence under the First Step Act, citing "a long list of medical problems which include essential hypertension, asthma, inflammatory polyarthropathy [sic], tachycardia, ulcerative colitis, factor S blood clot disorders and an abnormal immunological finding in serum." (*See* "Mtn.", ECF No. 88, at 9).  Defendant represents that he requested release to home confinement to the Warden of Tucson USP (hereinafter, "BOP").  *Id.* at 2.

The Government opposes Defendant's motion, arguing it should be denied because (1) Defendant has failed to present any "extraordinary and compelling reasons" warranting a sentence reduction, and (2) § 3553(A) weigh against his release because Defendant poses a danger to public safety.  (*See generally* ECF No. 90).  The Government filed a supplemental brief recognizing that Defendant's BMI, which is over 30, may present an extraordinary and compelling reason warranting compassionate relief, but urges the Court nonetheless to find this is an insufficient basis, as "40% of American adults present a BMI of 30 or higher."  (ECF No. 97 at 1).  Defendant, through counsel, filed a motion for leave to file a reply and sur-reply to Defendant's motion for Compassionate Release.  (ECF No. 95).  The Court granted the request.  (ECF No. 96).

Through counsel, Defendant's reply argues that Defendant's medical history and conditions make him vulnerable to serious illness from contracting COVID-19 while in

---

[1] Initially, a grand jury charged Defendant with a three-count indictment charging him with Sex Trafficking of Children, in violation of 18 U.S.C. § 1591(a) and (b); Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a); and Possession of Images of Minors Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(4)(b).  (*See* "Indictment", ECF. No. 14).  A superseding five-count indictment was filed on November 22, 2013, charging Defendant with Sex Trafficking of Children, in violation of 18 U.S.C. § 1591(a) and (b); Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a) and (e); and Attempted Sexual exploitation of a Child in violation of 18 U.S.C. § 2251(a) and (e).  (*See* "Superseding Indictment", ECF. No. 31).

BOP custody.  (ECF No. 100 at 4).  Specifically, Defendant contends that his BMI of 33.7, in conjunction with his other underlying medical conditions are extraordinary and compelling reasons warranting his release.  *Id*. at 6-8.  Defendant also states the Government mischaracterized his Care Level, which is Care Level 2, indicating he "require[s] clinical evaluations monthly to every 6 months . . . for monitoring" and may require "[e]nhanced medical resources, such as consultation or evaluation by medical specialists."  (ECF No. 100 at 8) (citing Federal Bureau of Prisons, "Care Level" Classifications for Medical and Mental Health Conditions or Disabilities," (May 2019), https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf, at 2).  Defendant asserts that his rehabilitative efforts in prison foreclose the Government's argument that he poses a danger to others.  (ECF No. 100 at 13-16).  Defendant cites to his completion of courses in "anger management, communication development, criminal thinking, 2019 reentry simulation[,] other self-regulation programs" in addition to graduating from the BOP's Challenge Program.  (*Id*. at 14-15).[2]

## **LEGAL STANDARD**

Under § 3582, as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may modify a defendant's sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).  Upon such a motion, a court may modify a defendant's

---

[2] As noted by the Government's second Supplemental Brief, Defendant has not completed the Sex Offender Treatment Program.  While Defendant claims he declined treatment due to a waitlist and being unable to complete the program prior to his release date, the Government rebuts this argument by claiming Defendant would be prioritized for enrollment of this program based on his release date.  (ECF No. 101 at 2-3).  The Government posits that while Defendant's completion of other programs has been commendable, these programs are not adequate substitutes for the Sex Offender Treatment Program, particularly because Defendant's "inability to confront his past treatment of victims demonstrate he is not whole."  (*Id*. at 3).

13cr1247-JAH

sentence "after considering the factors set forth in § 3553(a) to the extent applicable" if it finds "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A)(i).   The relevant Sentencing Commission policy statement sets forth several "extraordinary and compelling reasons." U.S.S.G. § 1B1.13(1)(A) & cmt. 1.  The Commission also requires the defendant not pose a danger to the safety of the community as provided in 18 U.S.C. § 3142(g).  *Id*. § 1B1.13(2).

## DISCUSSION

Defendant seeks review of his sentence under § 3582(c).  As a threshold matter, Defendant has exhausted his administrative remedies.  On April 15, 2020, Defendant's motion represents that he requested compassionate release with the Warden of USP Tucson.  (ECF No. 88 at 2).  More than thirty days has elapsed since Defendant's request for a reduction of his sentence.   Accordingly, the Court deems Defendant properly exhausted his administrative remedies pursuant to § 3582(c)(1)(A).

### a.    Extraordinary and Compelling Reasons

To be eligible for compassionate release, Defendant must demonstrate that "extraordinary and compelling reasons" warrant such a reduction and that the reduction is "consistent [with] applicable policy statements" issued by the U.S. Sentencing Commission.   18 U.S.C. § 3582(c)(1)(A). Although the statute does not define "extraordinary and compelling circumstances," the U.S. Sentencing Commission has identified four categories of situations that may qualify: serious medical conditions, advanced age, family circumstances, and a catch-all "other reasons." U.S.S.G. 1B1.13, application note 1(A). In application note 1 to the policy statement, the Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release for a medical condition as follows:

> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required[.]

(ii) The defendant is—
    (I) suffering from a serious physical or medical condition,
    (II) suffering from a serious functional or cognitive impairment, or
    (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

United States Sentencing Guidelines, Application Notes, § 1B1.13(1)(A). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, cmt. n.1(D).

    Relevant to the Court's analysis, and as reported in his Pre-Sentence Report, his motion, and BOP medical records, Defendant has Tachycardia Syndrome, which occurs from an abnormally fast resting heart rate, deep vein thrombosis with pulmonary embolism in one of his legs, asthma, hypertension, rheumatoid arthritis and heart palpitations. (ECF No. 90, "Ex. 11" at 71, 93, 172, 390).[3]  The Court finds that the combination of Defendant's medical conditions qualifies as extraordinary and compelling reasons to reduce his sentence that are consistent with the Guidelines' policy statement.  According to the CDC, the following conditions might be at an increased risk for severe illness from the virus that causes COVID-19: moderate to severe asthma, hypertension and individuals in an

---

[3] Defendant's motion lists numerous conditions that are not relevant to the Court's analysis: gastro-esophageal reflux disease without esophagitis (GERD), [PSR at ¶ 91], chronic periodontitis, calculus of the lower urinary tract, migraines, bilateral benign breast nodules, astigmatism, vitamin D deficiency, and ulcerative colitis.  (ECF No. 90, "Ex. 11" at 71, 93, 172, 390).  While serious, these conditions do not pose a significant risk of severe illness if Defendant were to contract COVID-19.  Accordingly, these conditions will not be a part of the Court's calculus as to whether Defendant's medical state is a basis for compassionate release.  Furthermore, Defendant's supplemental brief also cites to his high BMI as a basis for compassionate release.  The Court recognizes that some intra-district case law supports finding a high BMI as a basis for relief under § 3582.  The Court is not prepared to find obesity, alone or in conjunction with another medical condition, as a basis for compassionate release.  Because the Court ultimately finds Defendant has other qualifying illnesses under § 3582(c)(1)(A), this Court will not decide whether a high BMI presents an "extraordinary and compelling reason" warranting relief.

immunocompromised state.[4]   Even though knowledge of the connection between these conditions and COVID-19 is still developing, the Court is mindful to take heed of the CDC's recommendations and the existing studies.   There is concern that Defendant is failing to take his medication, thereby undermining his treatment, or hoarding his medication as provided by the Government.  (ECF No. 90 at 8).  However, the Court finds that on balance, the seriousness of his medical conditions and the risk of severe illness while incarcerated is an extraordinary and compelling circumstance in accordance with the United States Sentencing Guidelines, and overall outweighs the Court's concerns of allegations of medication misuse.  *See e.g., United States v. Ludwig*, 2020 WL 4547347 (E.D. Cal. August 6, 2020); *United States v. Brown*, 2020 WL 4745098 (S.D.N.Y. June 17, 2020).

### b. Factors Under § 3553(a)

Even where extraordinary and compelling reasons exist, the district court must consider § 3553(a), which provides that the sentencing court must impose a sentence that is "sufficient, but not greater than necessary, ... (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" 18 U.S.C. § 3553(a)(2)(A)-(D). The sentencing court is also directed to consider, among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant" and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" *Id.* § 3553(a)(1), (6).

---

[4] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 11, 2021).

13cr1247-JAH

With the awareness that Tucson USP currently has 183 confirmed active cases of COVID-19 among both inmates and staff[5], and in consideration of the § 3553(a) sentencing factors, the pleadings, and the record as a whole, the Court finds these factors are not in Defendant's favor.  The underlying offense which Defendant was charged is serious and the offense conduct is particularly troublesome. (*See* PSR at 4-5).   At sentencing, Defendant had a total offense level of 33, a criminal history score of 15, and a criminal history category of VI.  (ECF No. 77 at 2).  Defendant's guideline range was 235-293 months, and the Government recommended a sentence of 120-months in custody. (*Id*.) Defendant's sentence of 132-months in custody is well below the guideline range and is sufficient, but not greater than necessary to reflect the seriousness of the offense and to provide just punishment for the offense.  Reducing Defendant's sentence any further would not adequately punish Defendant's conduct or promote respect for the laws he has violated.

Defendant also has an extensive criminal history record spanning eight years. Relevant to the Court's analysis are Defendant's criminal convictions for misdemeanor Assault (2006, 2009); Escape (2006); Criminal Damage (2009); Assault – Intent/Reckless (2009); Assault with Great Bodily Injury (2008); Threat-Intimidate (2009); and two counts of Assault with a Deadly Weapon (2012).  (*See* PSR at 10-13).  This history is indicative of a pattern of violent behavior and undermines Defendant's contention that he will not be a danger to the safety of the community. *See* U.S.S.G. § 1B1.13(1)(A), (2), cmt. n. 1. Furthermore, while not a dispositive factor, Defendant has been listed as "Security Classification – High" and as being a high risk for recidivism. (ECF No. 90 at 13 (citations omitted)).   This is particularly compelling in light of Defendant's extensive criminal history.

The Court recognizes Defendant has served a substantial portion of his sentence, and that he has taken advantage of several education and rehabilitation opportunities available

---

[5] https://www.bop.gov/coronavirus/ (last visited January 11, 2021).

to him.  While the Court commends Defendant's efforts, upon considering the Section 3553(a) factors that weigh against release, this Court cannot find that reducing Defendant's sentence is what the legislature intended in broadening the basis for compassionate release.

## **CONCLUSION**

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED Defendant's Motion for Compassionate Release is **DENIED**.

**IT IS SO ORDERED.**

DATED:  January 15, 2021

_____
JOHN A. HOUSTON
United States District Judge